UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Hon. Esther Salas |
| | : | |
| v. | : | Crim. Nos. 13-113 and 13-552 |
| | : | |
| ZHIFEI LI, | : | |
| | : | |
| Defendant. | : | |

JOINT FACTUAL STATEMENT

The United States Attorney for the District of New Jersey, the United States Attorney for the Southern District of Florida, and the Environmental Crimes Section of the United States Department of Justice (collectively referred to herein as the "Government") and the defendant, Zhifei Li (referred to herein as the "defendant," "Li" or "defendant Li"), agree that this Joint Factual Statement is true and accurate, and substitutes for the defendant's allocution to the offenses charged. The parties further agree that this Joint Factual Statement contains a joint statement of the facts, relevant conduct and stipulations and provides a factual basis for the Court to accept defendant Li's guilty plea in the above-captioned matter to a Superseding Information (Crim. No. 13-113), charging one count of conspiracy to smuggle, traffic in, and make and submit false shipping records for, raw rhinoceros horns, in violation of Title 18, United States Code, Section 371; six counts of smuggling or attempted smuggling of rhinoceros horn or elephant ivory items, in violation of Title 18, United States Code, Sections 554 and 2; one count of trafficking in the raw horns of endangered black rhinoceros, in violation of the Lacey Act, Title 16, United States Code, Sections 3372(a)(1) and 3373(d)(1)(A) and Title 18, United States Code, Section 2; and two counts of making and submitting false shipping records for rhinoceros horn or elephant ivory items, in violation of the Lacey Act, Title 16, United States Code, Sections 3372(d) and 3373(d)(3)(A)(i) and Title 18, United States Code, Section 2 (the "New Jersey Superseding Information"); and to defendant Li's guilty plea to Count Two of an Indictment originally filed in the Southern District of Florida and subsequently transferred

Page 1 of 24

to the District of New Jersey, pursuant to Rule 20 of the
Federal Rules of Criminal Procedure, charging him with smuggling
raw horns of endangered black rhinoceros (Crim. No. 13-552) (the
"Southern District of Florida Indictment").[1]  The defendant

---

[1] At all times relevant to this Joint Factual Statement, trade in
rhinoceros horn and elephant ivory had been regulated under the
Convention on International Trade in Endangered Species of Wild Fauna
and Flora ("CITES") since 1976.  CITES was an international treaty
providing protection to fish, wildlife and plants that were or could
become imperiled due to the demands of international markets.  CITES
had been signed by over 170 countries including the United States and
China.  CITES was implemented in the United States under the authority
of the Endangered Species Act ("ESA") and the regulations promulgated
thereunder.  16 U.S.C. § 1538(c); 50 C.F.R. §§ 14 and 23.  An animal
species listed as protected within CITES could not have been legally
exported from the United States without prior notification to, and
approval from, the U.S. Fish and Wildlife Service.  50 C.F.R. §§
23.13. and 23.20.  Species protected under CITES were listed in a
series of appendices (Appendices I, II and II).  Under Appendix II of
CITES, a species could be legally exported from the United States to a
foreign country only if, prior to exportation, the exporter possessed
a valid CITES export permit issued by the United States.  See 50
C.F.R. §§ 23.13 and 23.20.  Under Appendix I of CITES, a species could
be legally exported from the United States to a foreign country only
if, prior to exportation, the exporter obtained a valid foreign import
permit and a valid CITES export permit issued by the United States.
See 50 C.F.R. §§ 23.13, 23.20 and 23.35.  All rhinoceros and elephant
species were protected under either CITES Appendix I or II.  The ESA
also made it unlawful to export any endangered wildlife species (Title
16, United States Code, Section 1538(a)(1)(A)).  Under the ESA, the
term "endangered species" included any species, or part thereof, in
danger of extinction throughout all or a significant portion of its
range.  All species of wildlife determined to be endangered under the
ESA were listed in Title 50, Code of Federal Regulations, Section
17.11.  The species *Diceros bicornis*, commonly known as the black
rhinoceros, was listed as an endangered species.  Rhinoceros were
characterized by their enormous size, leathery skin and horns.
Rhinoceros horn was composed of keratin, the same material that makes
up human toenails.  Rhinoceros horn was a highly valued and sought
after commodity despite the fact that international trade in it has
been largely banned and otherwise highly regulated since 1976.
Libation cups and other ornamental carvings were particularly sought
after in China and other Asian countries as well as in the United
States.  The escalating value of these items had resulted in an
increased demand for rhinoceros horn and helped to foster a thriving
black market in the horn.  Most species of rhinoceros were extinct in

agrees that, had this matter proceeded to trial, the Government would have proven, beyond a reasonable doubt, the charges set forth in the New Jersey Superseding Information and Count Two of the Southern District of Florida Indictment and the facts contained in this Joint Factual Statement.[2]

## I. Summary

Zhifei Li, 29, is from the Shandong Province, China. Since 2011, he has owned and managed an antique shop, Overseas Treasure Finding, located in Jinan City, Shandong, China. Li was involved in purchasing, selling and smuggling Asian art and antiques prior to opening his own business.

Li was arrested on or about January 30, 2013, in Miami Beach, Florida, on a Criminal Complaint sworn out in the District of New Jersey, on September 27, 2012, charging Li, who lived in China, with wildlife smuggling. Li's trip was planned in coordination with a Chinese national who owned an antique business in New York (hereinafter, the "Long Island City Dealer") and who, at Li's direction, on numerous occasions over more than a year, smuggled rhinoceros horns and art objects made from rhinoceros horn and elephant ivory to Li in China by way of Hong Kong. As set forth below, prior to entering the United States, Li asked the Long Island City Dealer to assist him in locating rhinoceros horns there. Li was arrested by Special Agents with the U.S. Fish & Wildlife Service - Office of Law

---

the wild or on the brink of extinction as a result. Elephant ivory and carved art objects made from such ivory were also highly valued and sought after commodities despite the fact that international trade in them had been largely banned and otherwise highly regulated since 1976. Ivory was composed of dentine with a layer of enamel, just like teeth. The demand for antiques and art made of or containing elephant ivory had also resulted in a thriving black market. Elephants were threatened in many countries as a result. In addition to the CITES export document requirements set forth above, Title 50, Code of Federal Regulations, Section 14.63, required that a completed Declaration for Importation or Exportation of Fish or Wildlife signed by the exporter, or the exporter's agent, be filed with the United States Fish and Wildlife Service prior to the export of any wildlife at the port of exportation.

[2] Attachment A to the Joint Factual Statement provides exhibits in support of the facts set forth herein.

Enforcement ("USFWS-OLE") several days after arriving in the United States and after he purchased two horns of the endangered black rhinoceros in an undercover operation in Miami Beach, Florida, of which he was the target. Li has been detained since his arrest. He was indicted on two counts in the Southern District of Florida on February 12, 2013. The second count charged a violation of 18 U.S.C. § 554 (smuggling raw rhinoceros horns from the United States). On February 11, 2013, Li was indicted in the District of New Jersey in a one-count indictment charging conspiracy to smuggle raw rhinoceros horns from the United States, in violation of 18 U.S.C. § 371.

The investigation that led to the charges and to Li's arrest is part of Operation Crash, a proactive long-term USFWS investigation to detect and deter the illegal trade in rhinoceros horn and other protected species. The investigation of defendant Li stems from an undercover operation conducted in November 2011, during which a confidential informant (hereinafter, the "CI") working with USFWS-OLE sold two rhinoceros horns to an individual (hereinafter, the "New Jersey Middleman") at the Vince Lombardi rest stop on the New Jersey Turnpike. Approximately three months later, the CI sold two additional rhinoceros horns to the New Jersey Middleman during a follow-up undercover operation in Little Ferry, New Jersey. Both purchases were funded by Li from China and brokered by an Israeli national (hereinafter, the "Israeli Dealer") who arranged for the sale of these and other raw rhinoceros horns to Li. Li first became aware of the Israeli Dealer through purchases of ivory he made from this individual on an internet auction site. Li enlisted the help of the "Long Island City Dealer" to be his intermediary with the Israeli Dealer. The Long Island City Dealer came to open an Asian art gallery and auction in Long Island City, New York. Li learned of the raw rhinoceros horns for sale in the United States through the Long Island City Dealer who maintained contact with the Israeli Dealer and the New Jersey Middleman. The Long Island City dealer, acting on Li's behalf, provided advance funding supplied by Li for raw rhinoceros horns to the New Jersey Middleman who was acting on the Israeli's dealer's behalf as well as to others. The Long Island City Dealer smuggled the horns he purchased from the Israeli Dealer and New Jersey Middleman to Hong Kong at Li's direction.

As set forth more fully below, defendant Li purchased raw rhinoceros horns, as well as carved rhinoceros horns and objects made from elephant ivory, in the United States and smuggled them to China by way of Hong Kong. Li purchased these items via Internet auction, phone bidding and through the Long Island City dealer and two other Chinese nationals who worked in the United States as antiques dealers (hereinafter, respectively, the "Dallas Dealer" and Qiang Wang, a/k/a "Jeffrey Wang"[3]). These dealers then smuggled the wildlife items out of the United States without declaring them to USFWS, and without obtaining, or applying for, the required CITES export and import permits. With Li's knowledge and at his direction, the U.S. smugglers circumvented these requirements by submitting false customs declarations, declaring the shipments to be something other than wildlife, and by under-declaring the value of the shipments. Based upon the facts jointly stipulated to herein, the parties agree that the wildlife, including raw rhinoceros horns and carved rhinoceros horns and elephant ivory, smuggled and attempted to be smuggled, from the United States to China by defendant Li had a total market value of approximately $4.6 million.[5]

---

[3] On August 7, 2013, Wang pleaded guilty in the Southern District of New York to conspiring to smuggle rhinoceros and ivory items to China. He was sentenced to 37 months' imprisonment on December 5, 2013. *United States v. Qiang Wang*, Cr. 1:13-cr-00452 (KBF) (SDNY) (June 13, 2013).

[5] As set forth below, this estimated total market value includes the following transactions: (a) the purchase or attempted purchase and subsequent smuggling or attempted smuggling of 25 raw rhinoceros horns charged in the Count One of the New Jersey Superseding Information, and in Count Two of the Southern District of Florida Indictment, which had a total market value of approximately $2,640,000; (b) the purchase and smuggling of approximately $500,000 worth of ivory carvings through the "Long Island City Dealer"; (c) the purchase and smuggling, and attempted smuggling, of approximately $700,000 in rhinoceros horn libation cups and ivory through Wang; (d) the purchase and smuggling of 5 raw rhinoceros horns with a market value of approximately $350,000 through the Dallas Dealer; and (e) the purchase and smuggling of approximately $345,000 in rhinoceros horn libation cups through the Dallas Dealer. This estimate does not include certain other known purchases for which the weight or market value is difficult to estimate.

## II. Li's Role in the Offense Conduct

Li played a leadership and organizational role in this smuggling operation by arranging for financing to pay for the rhinoceros horns and elephant ivory, purchasing and negotiating for the wildlife in the United States, directing how to smuggle the wildlife out of the United States and into Hong Kong, obtaining the assistance of additional individuals in Hong Kong to receive the smuggled goods, and then arranging to have the goods smuggled into mainland China. Li supervised the activities of the Long Island City Dealer, the Dallas Dealer and Wang. Li was effectively their "boss" and his supervision entailed determining which items to purchase and what price to pay. Li paid each of these three for their assistance in obtaining and smuggling items. Li also directed where and how the items should be smuggled. For example, at Li's direction, these individuals smuggled rhinoceros horns and other wildlife items out of the United States by wrapping them in duct tape, hiding them in porcelain vases, and falsely describing them on shipping documents, including required customs declarations, as porcelain vases, handicrafts or objects other than rhinoceros. The wildlife goods were mailed to individuals in Fanling, Hong Kong, who were supervised by Li. The defendant paid these individuals a fee for their assistance in receiving the smuggled items in Hong Kong, and in smuggling them to mainland China at Li's direction.

Because there is a currency control policy in China that prohibits a single person from sending more than $50,000, Li arranged for others to wire the money to his U.S. accomplices or he paid to have the money sent from a money broker in Hong Kong who charged a higher than normal rate to convert and wire the funds. Both Li and the money broker arranged for Li's funds to be wired under the name of someone other than Li, thus concealing Li's involvement in the financial transactions from both the Chinese and U.S. authorities while also circumventing China's currency transfer limits.

At the time of his arrest, Li waived his Miranda rights and gave a post-arrest statement. During the course of the interview, Li stated that his antique business, Overseas Treasure Finding, only sells to a handful of wealthy customers in China. Li denied smuggling rhinoceros horns and claimed only to be involved in importing antiques. He admitted, however,

that various accomplices in the United States and Europe had smuggled merchandise to him without CITES certificates and that he regularly paid bribes to local customs officials in order to obtain merchandise. Li stated that he reserves a portion of his Chinese antique company's profits to pay for the bribes to local officials in China. Li acknowledged that he was aware of the requirement to obtain a CITES permit to export rhinoceros horns from the United States. Although Li admitted that he had never applied for or received a CITES permit from any country, he stated that he planned to obtain a CITES export certificate for the raw horns purchased in Miami Beach from the undercover agent.[6]

After obtaining counsel and reaching an agreement in principle to plead guilty, Li provided an attorney proffer and an in-person proffer. Li also provided consent four months after his arrest for the government to conduct a search of his electronic devices. During his proffer on May 29, 2013, Li stated that when rhinoceros horns became available from his U.S. or European contacts, he would show the items to at least two buyers in China and sell the items to the buyer who responded first or who was willing to pay the most. Li had dealings with at least three buyers of raw rhinoceros horn in China each of whom Li knew to have carving "factories" in China where raw rhinoceros horns were carved into fake antiques known as Zuo Jiu (which means "make it as old" in Chinese). According to Li, the majority of the 25 raw rhinoceros horns that he smuggled or attempted to smuggle were obtained on behalf of one client (hereinafter, the "Chinese Buyer"). While Li acted independently and also sold rhinoceros horns to other customers, according to defendant Li, the Chinese Buyer was the source of most of the funds that Li sent to the Long Island City Dealer and Li viewed the Chinese Buyer as a "boss." Li used his own funds to purchase the five rhinoceros horns obtained through the Dallas Dealer, and he sold these horns to different buyers in China, although he was arrested before he could receive and sell the last two horns. Li understood that the left over pieces

---

[6] That would not have been possible because of the total ban in the trade of endangered black rhinoceros (a CITES Appendix I species) and because China had banned the import of all rhinoceros horns. In order to obtain an U.S. CITES export permit, Li would first have had to obtain a valid Chinese import permit.

from making rhinoceros horn carvings were sold for alleged "medicinal" purposes.[7]

Rhino horn had a market value in China of at least approximately \$17,500 during the period of the offense. In pleading guilty, Li admits that he sold raw rhinoceros horn in China at a rate of 180 RMB per/gram plus a 60 RMB per/gram fee for a total of 240RMB/gram which equates to approximately \$17,762/pound (note: there are 453.5 grams in one pound). Li stated that new rhinoceros horns have a higher market value because of their perceived greater medicinal value and sell as high 1,200RMB per/gram (approximately \$88,822 per/pound). According to Li, he did not purchase new rhinoceros horns, though the records of the transactions do not show that age was a factor in making the purchases. Li determined what share of his smuggling proceeds to pay the Long Island City Dealer and a person assisting him in Hong Kong (hereinafter, the "Hong Kong Accomplice"), giving them a total of 35 RMB out of the total 60 RMB per/gram profit. Li paid the Long Island City Dealer 10 RMB per/gram or about 5 percent of the purchase cost and he paid the Hong Kong accomplice 15 RMB per/gram. (Li also used the name of the Hong Kong accomplice as an alias to conduct business.) Li had a similar arrangement with the Dallas Dealer. Li used his own funds to purchase rhinoceros horns from the undercover USFWS-OLE agent during the operation in Miami. Neither the Chinese Buyer nor Li's other buyers were involved in organizing the purchases, wiring the money to the United States, smuggling the items out of the United States, smuggling the items into Hong Kong, or smuggling the items into mainland China.

With regard to the purchase and smuggling of Asian Art and antiques, Li promised to pay the Long Island City Dealer, the Dallas Dealer and Wang each five percent of the purchase cost for their assistance in helping to obtain and smuggle the items. Li sold Asian Art and antiques, including wildlife items, through his own business to a small group of wealthy Chinese. Li provided his customers with photographs to determine their interest in items being sold in the United States and elsewhere. If the customer was interested, Li would require advance payment so that he could then purchase the item. Li profited from these deals because he sold the items

---

[7] Rhinoceros horn is made of compressed keratin, the same material in human hair with no proven medical efficacy.

for an overall price that was higher than his costs.

## III.  The New Jersey Investigation

### A.  Smuggling of Raw Rhinoceros Horns Purchased in New Jersey

Between in or about December 2010 and in or about January 2013, defendant Li purchased or attempted to purchase at least 25 raw rhinoceros horns in the United States with the assistance of the Long Island City Dealer, including 13 black rhinoceros horns.  The price per pound paid by Li in the United States ranged from approximately $12,000 to approximately $16,000 per pound.  However, as stated above, the actual market value in China was at least $17,500.  The government's investigation has documented the purchase, and attempted purchase, by Li of 25 raw rhinoceros horns through the Long Island City Dealer weighing approximately 151 pounds, including the two horns he purchased during an undercover operation in Miami Beach, Florida in January 2013.[8]  Accordingly, the market value of this amount of raw rhinoceros horns in China was approximately $2.64 million. Upon defendant Li's instructions, the Long Island City Dealer sent all of the purchased horns, except the two horns from Cameroon, the last of the rhinoceros horns purchased in New Jersey in February 2012, and the two horns purchased in Miami Beach, Florida, to the Hong Kong accomplice or another individual at the same address of an international logistics company in Fanling, Hong Kong.

Prior to 2011, defendant Li had purchased ivory and alleged antiques on an Internet auction website from the Israeli Dealer then living in Florida.  Starting in approximately 2010, Li asked the Long Island City Dealer to collect these purchases in the United States and smuggle them to Hong Kong.  Starting in approximately 2011, Li directed the Long Island City Dealer to focus on obtaining rhinoceros horns from the Israeli Dealer.  As set forth in the New Jersey Superseding Information, the Long Island City Dealer (referred to as CC1 in the New Jersey

---

[8] This total weight of the raw rhinoceros horns includes an attempted purchase of two horns from Cameroon, as set forth *infra*, and the purchase of two horns from an undercover agent in Miami Beach, Florida, as alleged in Count Two of the Southern District of Florida Indictment.  It does not include the purchase and smuggling of one horn of unknown weight in February 2011.

Superseding Information) acquired horns from the Israeli Dealer (referred to as CC2 in the New Jersey Superseding Information) and the New Jersey Middleman (referred to as CC3 in the New Jersey Superseding Information). The Israeli Dealer obtained and purchased rhinoceros horns in the United States, including from or with the assistance of an individual associated with a taxidermy auction house in Missouri (the "Missouri Dealer") who bought and sold wildlife at auction and in private sales. The records of these transactions do not show that Li communicated or dealt directly with the New Jersey Middleman or the Missouri Dealer, but rather through the Long Island City Dealer who lived in the United States.

The prices Li paid for raw horns were determined by the weight and condition of the horns. It was a regular and routine practice for the Long Island City Dealer to email defendant Li photographs of the rhinoceros horn on a scale such that the measurement of its weight would be visible. Both defendant Li and the Long Island City Dealer maintained numerous email accounts under false names which they used to communicate. They also used various phone numbers and a Chinese Internet service. In the communications between Li and the Long Island City Dealer, the condition of the horns was discussed, but not the age of the horns or the type of rhinoceros from which they came (e.g., black rhinoceros, white rhinoceros, Asian rhinoceros).

Defendant Li arranged to wire funds from various individuals and corporations in China to fund the purchases. Because China restricts to $50,000 the amount that can be wired out of the country per year, defendant Li asked or paid others, including a money broker, to arrange for wiring money to various bank accounts in the United States owned, controlled or accessed by the Long Island City Dealer. For a fee, the money broker arranged for Li's funds to be wired under the name of someone other than defendant Li thus concealing Li's involvement in the financial transactions from both the Chinese and U.S. authorities while also circumventing China's currency transfer limits.

The Long Island City Dealer maintained a "General Ledger" spreadsheet that contained a running log of financial transactions between himself and Li, including those labeled with code words that signified rhinoceros horn, as well as additional line items for rhino and ivory. The General Ledger

Page 10 of 24

also indicated whether the money was wired to the Long Island City Dealer's bank account or the bank account of a member of his family over which he exercised control.  From time to time the General Ledger was sent by email to Li in China for his review of the running totals.  Financial records including the General Ledger and the bank accounts used by the Long Island City Dealer and Li provide a documentary record of the illegal transactions.

Once the money Li wired was received by the Long Island City Dealer, the Long Island City Dealer would drive from New York to New Jersey and provide advance payment in cash to the New Jersey Middleman.  After the New Jersey Middleman obtained the rhinoceros horns, the Long Island City Dealer would drive back from New York to New Jersey to pick them up.

At Li's direction, the Long Island City Dealer then smuggled the rhinoceros horns out of the country by wrapping them in duct tape, hiding them in porcelain vases, and falsely describing them on shipping documents, including required customs declarations, as porcelain vases or objects other than rhinoceros.  The horns were usually mailed to the Hong Kong accomplice at the logistics company in Fanling, Hong Kong, who was supervised and paid by Li.  Most of the packages were mailed via United States Postal Service Express Mail, though some were mailed using private express mail services.

Some examples of specific incidents charged in Count One of the New Jersey Superseding Information include the following:

● As set forth in Overt Act 2, in late 2010, defendant Li directed the Long Island City Dealer to purchase raw rhinoceros horns from a person in Cameroon that Li found for sale on the internet.  On or about December 22, 2010, the Long Island City Dealer emailed photographs of the horns to Li, including a photograph of a dead or darted rhinoceros from which the horns had been just removed.  Although they suspected it was a scam, the price was sufficiently low that they thought it was worth the risk.  According to Li, he learned the photos were fake after seeing them on the internet and told the Long Island City Dealer that he did not want to go through with the deal.  The final decision to send an $8,000 down payment via Western Union for horns weighing approximately 9.4 pounds

Page 11 of 24

was made by the Long Island City Dealer. Their suspicions were later confirmed when they were cheated out of the down payment.

● As set forth in Overt Act 5, on or about April 25, 2011, the Long Island City Dealer emailed photographs of two rhinoceros horns to defendant Li. Defendant Li arranged for a deposit of money into the Chinese bank account of an individual in the U.S. who then provided $120,000 in cash to the Long Island City Dealer who, in turn, wired the money to the Israeli Dealer. On May 16, 2011, the Long Island City Dealer emailed defendant Li an updated General Ledger that showed this transaction.

● As set forth in Overt Act 8, the Long Island City Dealer obtained two horns from the Israeli Dealer who, in turn, purchased them from the Missouri Dealer. These horns were shipped to an individual in Miami who drove the horns to Wanaque, New Jersey, for sale to the Long Island City Dealer. The Israeli Dealer paid for the horns by wiring money to the Miami individual who, in turn, wired the money to the Missouri Dealer. The Long Island City Dealer paid for the horns with funds that were in part fronted by a Florida Chinese restaurant owner known to the Long Island City Dealer whom Li reimbursed by depositing money in the restaurant owner's bank account in China. The Long Island City Dealer also wired additional funds to the Israeli Dealer's U.S. and foreign bank accounts.

● As set forth in Overt Act 9, the Missouri Dealer put the Israeli Dealer in touch with the New Jersey seller of four horns from the endangered black rhinoceros. On October 31, 2011, Li arranged for some of the approximately $99,980 of the necessary payment to be to be wired from a Chinese company to bank accounts controlled by the Long Island City Dealer. The Long Island City Dealer provided the New Jersey Middleman with cash that was used to obtain the horns. The Long Island City Dealer wired additional payment to the foreign bank account of the Israeli Dealer on or about November 18, 2011.

● As set forth in Overt Act 10, on or about November 16, 2011, the New Jersey Middleman, acting on behalf of the Israeli Dealer, purchased two black rhinoceros horns from

Page 12 of 24

the CI at the Vince Lombardi rest stop on the New Jersey Turnpike. The transaction was brokered by the Missouri Dealer. The Long Island City Dealer sent photos of these horns to Li in China and Li wired money to buy the horns. The two rhinoceros horns weighed approximately seven pounds and, per Li's instructions, were mailed by the Long Island City Dealer to Li through accomplices in Hong Kong.

● As set forth in Overt Act 11, in January 2012, the Long Island City Dealer purchased a large rhinoceros horn weighing almost 16 pounds. The horn had been sold by the Missouri Dealer to the Israeli Dealer. Since he lived outside the U.S., the Israeli Dealer directed the New Jersey Middleman to arrange payment for the rhinoceros horn and sell it to the Long Island City Dealer. This horn was then mailed from Missouri to the New Jersey Middleman's business in Little Ferry, New Jersey. With money obtained from Li, the Long Island City Dealer purchased this horn and paid some in cash to the New Jersey Middleman, and some by wiring money to U.S. and foreign bank accounts of the Israeli Dealer. At Li's instructions, and with false documents, this horn was then smuggled out of the United States and into Hong Kong.

● As set forth in Overt Act 12, Li and the Long Island City Dealer purchased and smuggled an 8-pound black rhinoceros horn in approximately February 2012. The Israeli Dealer had learned of the availability of the horn from the Missouri Dealer and sent the New Jersey Middleman to Pennsylvania to purchase the horn. It was sold to the Long Island City Dealer who, with funds provided by Li, delivered cash to the New Jersey Middleman, wired additional funds to the Israeli Dealer's foreign bank account, and mailed the horn to Li.

● As set forth in Overt Act 13, the Long Island City Dealer traveled from New York to New Jersey to buy two rhinoceros horns. Li had wired approximately $50,000 to the Long Island City Dealer on February 4, 2012, and this amount was included in the General Ledger with a code word for rhino. Consistent with the manner and means used before, on February 17, 2012, the New Jersey Middleman used these funds to purchase two black rhinoceros horns from the CI. A day later, federal agents executed a warrant at the

Page 13 of 24

business premises of the New Jersey Middleman and seized the horns weighing 5 pounds and 8 ounces, as well as a large box containing a matching set of elephant ivory tusks that weighed 104 pounds.

## B.  Smuggling of Other Wildlife, Asian Art and Antiques

In addition to raw rhinoceros horns, defendant Li purchased and smuggled other objects made from protected species, including art objects made of carved rhinoceros horn, such as rhinoceros horn libation cups, and carved objects made from elephant ivory.  Li purchased wildlife items on the Internet, via Internet auction, by phone bidding from China and through the Long Island City Dealer, the Dallas Dealer, and Wang.  Each smuggled wildlife items to the same addresses in Fanling, Hong Kong, per Li's instructions.  Each was promised or paid a percentage to obtain the wildlife objects and smuggle them to China.  As with the purchases of raw horns, each received wire transfers from various accounts in China arranged by defendant Li.  The fact that an item had appeared in the catalogue of a U.S. auction house had the potential to increase the value of an object because it helped to provide a known provenance for the item for eventual re-sale.  For example, USFWS-OLE has documented one instance in which unbeknownst to Li, an apparently modern rhinoceros horn carving that he purchased from an auction house in the United States and smuggled to China, had just been smuggled into the United States from China as part of a different criminal conspiracy.

The Long Island City Dealer owned a Long Island City-based antique auction and gallery that defendant Li helped to start by providing funding and merchandise.  Li also assisted the business by serving as its appraiser and Asian art expert, albeit over the Internet from China.  The same General Ledger used to record transactions of raw rhinoceros horns was used to account for other financial transactions between defendant Li and the Long Island City Dealer.

Between 2011 and 2013, defendant Li purchased approximately 60 carved ivory items with an approximate market value of $500,000.  All were purchased in the U.S. with his own funds and then smuggled to China by the Long Island City Dealer at Li's direction.  Li purchased these items for re-sale in China where the market value and demand was greater.  In

December 2012, defendant Li also purchased a rhinoceros horn
libation cup that had failed to sell at the Long Island City
auction house. He paid by wiring the bulk of the $85,000
purchase price to a bank account in China over which the U.S.
seller, a Chinese national, had access. On July 15, 2011, the
Long Island City Dealer sent defendant Li an email with a photo
of two extremely large elephant ivory tusks being sold by the
Israeli Dealer. Defendant Li instructed the Long Island City
Dealer to purchase the ivory tusks and to take them to a shipper
in Linwood, New York. While the purchase price of the two
matching tusks weighing 104.5 pounds was approximately $8,000,
their actual market value in China was much higher. In an email
written in Chinese dated on or about December 9, 2011, defendant
Li instructed that the shipper should not use the word "tusk" on
the shipping documents, but instead should declare the contents
as "automobile parts." Although defendant Li sought to have the
Long Island City Dealer arrange to have these tusks smuggled out
of the United States, they were seized by USFWS-OLE during the
execution of a search warrant on the New Jersey Middleman's
business where the tusks were being stored by the Long Island
City Dealer.

## IV.   Attempted Smuggling of Raw Horns in Miami

On or about January 27, 2013, defendant Li arrived in the
United States at Newark Liberty International Airport from
Beijing, China. Upon arrival, Li cleared U.S. Customs and
Border Protection entry inspection, during which he claimed to
be in the auction business, dealing in porcelain and bronze
items. Prior to his arrival, Li had asked the Long Island City
Dealer to invite him and a friend, the President of an oil
company in China, to visit the United States to work for his
antique business during the Original Miami Beach Antique Show in
which he maintained a booth. Immediately prior to his travel
from China, defendant Li sent a text message to the Long Island
City Dealer asking, in code, if he could look for items like
those previously purchased from the Israeli Dealer, which Li
could purchase while in the United States. In a recorded phone
call prior to his arrival, defendant Li told the Long Island
City Dealer that he (Li) had as much as $500,000 to spend while
in the United States on antiques and rhinoceros horn.

After he arrived in the Miami area for the antique show,
the Long Island City Dealer advised defendant Li of two

Page 15 of 24

rhinoceros horns being offered for sale by a dealer who was actually an undercover Special Agent employed by USFWS-OLE. Li indicated that he had black market bank connections and could readily move money from China to the United States to purchase the horns.

On January 28, 2013, at approximately 10:20 a.m., the undercover USFWS-OLE Special Agent received a telephone call from the Long Island City Dealer that was recorded. During the call, the Long Island City Dealer could be heard conversing in Mandarin with defendant Li. The Long Island City Dealer advised the Special Agent that Li was interested in buying rhinoceros horns. The Special Agent indicated that there were two horns for sale, a large horn weighing five pounds at a price of $10,000/lb. and the small horn weighed 2.2 pounds at $5,000/lb. They agreed to meet later that day at a hotel in North Miami Beach.

At approximately 4:20 p.m. the same day, defendant Li and the Long Island City Dealer visited the undercover agent at the hotel. Defendant Li introduced himself, indicated that he had just arrived from China and added that his English was not good. Li responded to questions asked by the undercover officer in English; at other times, questions and answers were interpreted by the Long Island City Dealer. During the conversation, defendant Li was told that the horns were from a black rhinoceros. Defendant Li indicated that the large horn was a good one and that the smaller horn was "not good." During the conversation the Special Agent asked Li what was being done with the rhino horns in China. Defendant Li responded in English by stating "*carving,*" later elaborating that the carvings were "*cup. . . drinking cup.*" Defendant Li advised through the interpretation of the Long Island City Dealer that "*libation cups are old, antiques.*" Li stated in Mandarin that the large horn he had just purchased would be made into a "*simple bowl.*" During the conversation, Li stated that he did not buy "fresh horns" but only horns that were 50 years old. He falsely claimed that he could get a CITES permit if the horns were from before 1970 and claimed that he planned to do so. A CITES permit and declaration to USFWS is required to import or export protected species regardless of age. In fact, Li had never previously sought a CITES export permit and it would not have been possible to obtain such a permit for black rhinoceros horns

where all trade is banned and because China does not allow the import of rhinoceros horns.

On January 30, 2013, defendant Li returned to the hotel where he paid some additional cash, promised to pay the remainder, and took possession of the rhinoceros horns. Although defendant Li negotiated to purchase the raw rhinoceros horns for approximately $59,000, they were worth approximately $88,000 based on the Li's other sales in China. The payment, arranged by Li, was wired from a corporation in Hong Kong to the Long Island City Dealer's bank account.

During the second recorded meeting with the undercover Special Agent, defendant Li indicated, through the translation of the Long Island City Dealer, that he was interested in purchasing more rhinoceros horns regardless of quality and that he would buy "as much as you can find." Defendant Li provided an email address and asked the undercover agent to email him images of any horns that he is able to find. In English, defendant Li asked the undercover agent "Can you ship directly to Hong Kong?"

## V. Smuggling of Raw Rhinoceros Horns, Carvings and Ivory from Dallas

In approximately 2011, defendant Li contacted the Dallas Dealer from whom he had previously purchased ivory that had been shipped to Li via Hong Kong. Li supervised the Dallas Dealer and paid him a five percent fee. Li notified the Dallas Dealer of items of interest and vice versa. When Li arranged to send the Dallas Dealer funds for purchase via wire transfers from various accounts in China, the Dallas Dealer purchased the items and then smuggled them out of the United States to the same individuals and same address in Hong Kong, per Li's instructions. At Li's direction, the Dallas Dealer prepared a customs declaration form that falsely described wildlife items to be shipped and falsely stated the value of the items as being significantly less than the real cost.

In addition to various carved items, including some made from rhinoceros horn and elephant ivory, defendant Li asked the Dallas Dealer to help him in purchasing raw rhinoceros horns from a different auction house located in Florida. Between approximately April 2012 and January 2013, defendant Li

Page 17 of 24

purchased five raw rhinoceros horns from an auction house in Florida with the assistance of the Dallas Dealer. Although the purchase price was less, the horns smuggled by defendant Li and the Dallas Dealer weighed at least 20 pounds and, thus, had a market value in China that was more than approximately $350,000. In addition, with the assistance of the Dallas Dealer, defendant Li purchased rhinoceros horn libation cups through various U.S. auction houses, including items purchased for approximately $168,000, $130,000, and $47,359, respectively. No CITES export certificates were sought or obtained for either the raw rhinoceros horns or the carved rhinoceros horn libation cups or ivory purchases nor were any of these shipments declared to USFWS-OLE as required. At Li's instruction and with his knowledge, the rhinoceros horn items were placed inside porcelain vases and falsely declared as porcelain on the required customs declaration along with an understated and false value.

The first transaction involving a raw horn took place in approximately April 2012 when defendant Li telephoned the Dallas Dealer from China and asked him to purchase a carved rhinoceros horn libation cup and a raw rhinoceros horn from the Florida auction house. The Dallas Dealer was unsuccessful in purchasing the libation cup, but he successfully purchased a horn weighing approximately eight pounds for approximately $95,000 after traveling from Texas to Florida to view the horn on behalf of Li. While in Florida, the Dallas Dealer mailed the black rhinoceros horn to Hong Kong per Li's instructions. Li sent an email to the Dallas Dealer on April 10, 2012, directing that the unusually long rhinoceros horn should be cut into two pieces, wrapped in electrical tape, and sent in two different packages via United States Postal Service. The email attached a photograph of the horn that the Dallas Dealer had sent to Li with a red line drawn through it indicating where the lengthy horn should be cut into two pieces. The market value of this one horn in China was in excess of approximately $140,000.

The second rhinoceros horn transaction occurred in approximately July 2012. The horns were obtained by defendant Li from the Dallas Dealer for approximately $30,000 and smuggled via a private shipping company to the same Hong Kong address provided by defendant Li based upon documents obtained by the Government. The exact weight of these two rhinoceros horns is unknown.

Page 18 of 24

An undercover Special Agent with USFWS-OLE consigned two rhinoceros horns to a Florida auction house. Instead of selling the horns at a public auction, the Florida auction house approached the Dallas Dealer and his wife to see if they would buy them in a private sale. In January 2013, after communicating with Li and immediately prior to defendant Li's arrival in Miami, the Dallas Dealer purchased the horns weighing approximately eight pounds and 11.8 ounces for $75,000 and again shipped them to Hong Kong per Li's instructions. Based on their weight, the horns had a much greater market value in China. In an email written in Mandarin and dated January 16, 2013, defendant Li instructed the Dallas Dealer to wrap the horns in plastic and tape in order to disguise the shape and to send the two horns in separate packages. The Dallas Dealer did as directed.

Defendant Li obtained and sought to obtain other smuggled items from the Dallas Dealer. In May 2012, defendant Li asked for the Dallas Dealer to purchase several rhinoceros horn libation cups being offered for sale by an Internet-based auction house. The Dallas Dealer was successful in purchasing a rhinoceros horn libation cup for approximately $168,215 and shipped the cup without proper declaration or permits to the same address in Hong Kong as other items that he had shipped and as also was used by the Long Island City Dealer and Wang. Another carving, made from a whole rhinoceros horn, was purchased from the Texas auction house in which the Dallas Dealer was employed. The item was originally sold to another buyer but cancelled in favor of the sale to Li. Although the August 22, 2012, invoice specifically states that international shipping is not available, the U.S. Postal Service express mail tracking slip shows this item was smuggled to the same address in Hong Kong as were other shipments. In August 2012, the Dallas Dealer, at Li's request, arranged to bid on a carved rhinoceros horn libation cup being sold by a California auction house for the purpose of smuggling it to China. Although the Dallas Dealer won the auction on Li's behalf with a winning bid of $130,000, only $30,000 was paid by the Dallas Dealer to the auction house because Li did not pay the full amount. According to Li, this is because his buyer withdrew from the deal. As a result, Li never took possession of this libation cup. Li suggested that the Dallas Dealer should make other purchases of wildlife items that ultimately were not purchased or smuggled.

## VI. Smuggling of Rhinoceros Horn Carvings and Ivory from New York

Wang is a Chinese national living in the New York area. Although Wang formed an antique business incorporated in New York, his primary business since approximately 2009 involved smuggling Asian art and antiques, including items made from rhinoceros horn and elephant ivory, to the friend of Li's identified above as "the Chinese Business Associate". After the Chinese Business Associate was arrested in China for smuggling ivory, Li became Wang's boss and Wang smuggled items to Li. The total purchase price of items purchased for Li and smuggled to him via Hong Kong by Wang was approximately $700,000 though these items were purchased in order to resell them in China where the market price was more. Li regularly asked Wang to purchase and smuggle raw rhinoceros horns as well but Wang was unsuccessful in doing so.

Wang was the winning bidder, on behalf of the Chinese Business Associate, of three rhinoceros horn libation cups sold by a New York auction house during Asia Week in September 2011. The total sales price was $1,159,500. After the arrest of the Chinese Business Associate, Li agreed to purchase two of rhinoceros horn cups and wired funds to Wang. The money was wired in June 2012 from various corporate bank accounts in Hong Kong. Wang picked up the merchandise from the auction house and smuggled these cups to Hong Kong per Li's request and instructions. The hammer price for the two cups purchased in September 2011 and smuggled to Li were $194,500 and $242,500 respectively, although Wang had to pay more as a penalty for backing out of the purchase of the third cup which he had won at the auction. Li sold these two rhinoceros horn libation cups to the president of an oil company in China who was a friend of Li and Li's family. According to Li, he paid only $320,000 to Wang because of damage to the cups, and resold them to his buyer for $400,000.

Defendant Li asked Wang to pick up a rhinoceros horn libation cup from the Long Island City Dealer's business that had not sold at a February 2012 auction. The cup had been consigned by two individuals in New York of Chinese origin. At Li's instructions, the rhinoceros horn libation cup was smuggled via U.S. Postal Service to Hong Kong by Wang. As referenced

above, defendant Li paid approximately $85,000 for the rhinoceros horn cup, including a wire transfer of approximately $64,000 of that amount to the Chinese bank account of one of the New York consigners.  In March 2012, Li purchased another rhinoceros horn libation cup through Wang's assistance from a third New York City auction house for $170,500.  Li provided Wang with instructions for shipping this rhinoceros horn cup to Hong Kong.

In January 2012, Wang purchased a large ivory carving for $12,000 from a California auction house on behalf of defendant Li.  However, Wang was hesitant to ship the large ivory carving internationally to defendant Li for fear of it being intercepted by authorities.  It was not received by Li, but was obtained by USFWS-OLE during a search of Wang's apartment and is among the items being relinquished by the defendant.  In December 2012, Wang delivered a box of five elephant ivory carvings to the Long Island City Dealer because Li had greater confidence in the packing abilities of the Long Island City Dealer.  These ivory carvings, worth roughly $4,000 were packed and mailed to the Hong Kong accomplice at the same address in Hong Kong, per defendant Li's instructions.  When USFWS-OLE personnel in New York seized this package from a post office in Flushing, New York, as part of Operation Crash, the customs declaration falsely represented that the contents of the package to be wood carvings valued at $200.

VII.  Conclusion

As set forth above, defendant Li admits that he committed the offenses charged in the New Jersey Superseding Information and in Count Two of the Southern District of Florida Indictment. Specifically, with regard to the crime of conspiracy, 18 U.S.C. § 371, Li admits that he was a party to or member of an agreement to commit offenses against the United States, that he joined the agreement or conspiracy knowing of its unlawful objectives and intended to join together with at least one other person to achieve those objectives, in that he shared a unity of purpose and a common goal to commit offenses against the United States, and that he and others committed the overt acts set forth in Count One of the New Jersey Superseding Information in order to further the objectives of the conspiracy.  With regard to the offense of smuggling, 18 U.S.C. §§ 554 and 2, which is both an object of the conspiracy charged in Count One of the New

Jersey Superseding Information, and a substantive offense charged in multiple counts in the New Jersey Superseding Information and in Count Two of the Southern District of Florida Indictment, Li agrees that he knowingly exported and sent from the United States, and attempted to export and send from the United States, rhinoceros horn and elephant ivory items contrary to law by knowingly failing to declare the merchandise to USFWS; exporting the merchandise without valid CITES export permits, in violation of the ESA; or exporting an endangered species in violation of the ESA. With regard to the Lacey Act trafficking offense, 16 U.S.C. §§ 3372(a)(1) and 3373(d)(1)(A) and 18 U.S.C. § 2, which is both an object of the conspiracy charged in Count One of the New Jersey Superseding Information and a substantive offense charged in Count Three of the New Jersey Superseding Information, the defendant admits that he knowingly exported rhinoceros horns that had been transported in interstate commerce and in the course of commercial activity and that had been sold in interstate and foreign commerce, in violation of the ESA. With regard to the Lacey Act false records offense, 16 U.S.C. §§ 3372(d)(1) and 3373(d)(3)(A)(i) and 18 U.S.C. § 2, which is both an object of the conspiracy charged in Count One of the New Jersey Superseding Information and a substantive offense charged in multiple counts in the New Jersey Superseding Information, Li admits that he knowingly made and submitted, and caused the making and submission of, materially false records, that is shipping documents, for CITES-protected rhinoceros horn and elephant ivory items that were or were intended to be exported from the United States.

AGREED AND ACCEPTED

PAUL J. FISHMAN
United States Attorney
District of New Jersey

By: _____
Kathleen P. O'Leary
Assistant United States Attorney

WIFREDO A. FERRER
United States Attorney
Southern District OF Florida

By: _____
Thomas Watts-FitzGerald
Assistant United States Attorney

APPROVED:

_____
Jacob T. Elberg
Chief
Health Care and Government Fraud Unit

ROBERT G. DREHER
Acting Assistant Attorney General
Environment & Natural
  Resources Division
U.S. Department of Justice

By: _____
Richard A. Udell
Senior Counsel
Environmental Crimes Section

Page 23 of 24

I have reviewed this Joint Factual Statement with my attorneys, Gary L. Cutler, Esq. and Brian S. Yang, Esq.  It has been translated for me into Mandarin and I understand it.  My attorneys and I have discussed it.  I agree that it is a true and correct statement of facts.

AGREED AND ACCEPTED:

_____
Zhifei Li                                    Date:  12/17/2013

I have discussed with my client this Joint Factual Statement.  I agree that it is a true and correct statement of facts and that it forms a sufficient factual basis for each count in the New Jersey Superseding Information and Count Two of the Southern District of Florida Indictment.  The Joint Factual Statement has been translated into Mandarin for my client and he understands it.

_____
Gary L. Cutler, Esq.                         Date:  12/17/13

_____
Brian S. Yang, Esq.                          Date:

Page **24** of **24**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | : Hon. Esther Salas |
| | : |
| V. | : Crim. Nos. 13-113 and 13-552 |
| | : |
| ZHIFEI LI, | : |
| | : |
| Defendant. | : |

Exhibits in Support of the Joint Factual Statement

# **Exhibits In Support of JFS**

- **Exhibit 1**: Photographs sent by email to defendant Li and the Long Island City Dealer on or about Dec. 22, 2010, offering fresh rhino horns for sale from Cameroon which they attempted to purchase. Corresponds to Count 1 (Conspiracy) Overt Acts 1-2.

- **Exhibit 2**: Email and photos from in or about April 2011 purchase and smuggling of raw rhino horns. Corresponds to Overt Act 5.

- **Exhibit 3**: Rhino horns sold and cash paid in or about Nov. 2011 on the NJ Turnpike by NJ Middleman which were then sold to the Long Island City Dealer and smuggled to defendant Li in Hong Kong. Corresponds to Overt Act 10.

- **Exhibit 4**: Email to defendant Li in or about Jan. 2012 with photo of raw rhino horn for sale. Corresponds to Overt Act 11.

- **Exhibit 5**: Email to defendant Li in or about Feb. 2012 with photo of raw rhino horn for sale. Corresponds to Overt Act 12.

- **Exhibit 6**: Email to defendant Li in or about Jan. 2012 with photo of rhino horn carving purchased by defendant Li for $85,000 and smuggled to Hong Kong.

- **Exhibit 7**: Email from defendant in or about Dec. 2011 and photo of elephant ivory tusks weighing approximately 105 lbs asking that the tusks be labeled as auto parts before shipping to Hong Kong. Tusks were seized by USFWS.

- **Exhibit 8**: Photos of 2 rhino horn carvings purchased at U.S. auctions for Li by the Dallas Dealer. Corresponds to Count 8.

- **Exhibit 9**: Email from defendant Li in or about Jan. 2013 and photo instructing with a red line where the Dallas Dealer should cut a large raw rhino horn in half before mailing in separate packages to Hong Kong. Corresponds to Counts 9-10.

- **Exhibit 10**: Two rhino horn carvings purchased by Wang and smuggled to Li in or about June 2012. Corresponds to Count 5.

- **Exhibit 11**: Photos of attempted smuggling of 5 ivory carvings in or about Dec. 2012 that were seized by USFWS. Corresponds to Counts 6-7.

- **Exhibit 12**: Still image from hidden video camera taken on or about Jan. 30, 2013, showing defendant Li buying raw rhino horns from USFWS covert agent with cash on the table at a Miami Beach hotel. Corresponds to Count 2 of the Southern District of Florida Indictment.





Exhibit 1

# Exhibit 2











Exhibit 3





Exhibit 4



Exhibit 5





Exhibit 6

# Exhibit 7

## large tusk

**From:**   "1311398202" <1311398202@qq.com>

**Subject:** large tusk

**Sent:**   Fri, 9 Dec 2011 14:03:58 +0800

会有美国那边的人联系你,关于那对████tusk, 如果你忙的话, 你安排一个人来处理, 打包, 运到船运公司
去, 不要让船运公司的人知道是tusk, 还是说是汽车配件







Exhibit 8

# Exhibit 9









Exhibit 10




Exhibit 11





Exhibit 12